IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RANDALL KEITH SMALL, ) | Case No. 18-40362-can11 |
| ) | |
| Debtor. ) | |
| ) | |

_____

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS
COMPELLING DEBTOR'S COUNSEL TO DISGORGE FEES AND EXPENSES**

The United States Trustee and the United States of America on behalf of the IRS filed motions to compel attorneys Neil Sader, Christopher Cusack, and the Sader Law Firm (collectively, "SLF") to disgorge fees and expenses paid to them in connection with the filing of this chapter 11 bankruptcy case. Specifically, the UST and the USA allege that the fees and expenses SLF incurred in filing the case were not reasonable and did not benefit the estate. At the initial hearing on the motions to disgorge, the Court directed SLF to file an application for compensation so that the Court could determine the reasonableness of the fees and expenses paid. Both moving parties then objected to the application for compensation. At the final hearing, all parties waived the right to present evidence and agreed to submit the matter on the moving papers and oral argument, and to deem the respective exhibits attached to the papers to be considered as evidence. For the reasons set forth below, the Court denies the application for compensation and grants the motions to disgorge.

*Background*

SLF filed a chapter 11 bankruptcy petition for Randall Keith Small ("Debtor") on February 12, 2018. SLF filed the chapter 11 several months after the Court dismissed Debtor's previous chapter 13 case (Case No. 17-42541) for failure to file a chapter 13 plan. The Missouri Department of Revenue's motion to dismiss for Debtor's failure to file 2014, 2015, and 2016 tax returns was pending at the time of the chapter 13 dismissal.

SLF filed the chapter 11 bankruptcy petition with a complete set of chapter 11 schedules and statements. SLF's Rule 2016(b) Disclosure of Compensation accompanying the petition stated that SLF had accepted $20,500 for legal services to be rendered in connection with the case and that the Debtor was the source of the funds. In response to paragraph 6 of the Rule 2016(b) Disclosure, SLF stated: "The amount of $4,467.75 was paid to SLF pre-petition. The balance of the $16,032.25 remains in the SLF Trust Account to be paid out according to Court requirements."

In contrast to the Rule 2016(b) disclosure of a $20,500 fee for legal services, Debtor's Statement of Financial Affairs ("SOFA") accompanying the bankruptcy petition disclosed that Debtor paid SLF an $18,000 "retainer fee" on February 10, 2018, and $2,500 for "costs and expenses" on February 12, 2018. In addition to the payment to SLF, the SOFA disclosed that $1,600 had been paid in the year before filing to the attorney who had filed the chapter 13.  The SOFA also disclosed that the Debtor was a defendant in a federal

criminal tax evasion proceeding, had entered a plea agreement, and that sentencing was pending.[1]

The Debtor also filed an application to employ SLF as counsel for the debtor on the date of filing. The Affidavit of attorney Neil Sader supporting Debtor's application disclosed yet another variation on the fee arrangement and source of funds:

> SLF was paid a total of $20,500.00 ($16,000 was paid by the Debtor, and $4,500.00 was paid by Debtor's business RSB Leasing, LLC.). SLF paid itself $4,467.75 in attorney fees for pre-petition services prior to filing.

Also on the same day as the petition, SOFA, and application to employ were filed, SLF filed an application for "approval of fee arrangement," seeking authority to be paid 80% of its fees and 100% of its expenses on a monthly basis. In support of this application, SLF alleged that it anticipated it would expend a significant amount of time on the case. SLF stated it would file with the court on a monthly basis itemized statements of attorney fees and expenses, and also provide copies of its monthly billing statements to the Debtor, the U.S. Trustee, all secured creditors, all parties requested notice, and any creditor's committee. Also filed with the petition was a motion to extend stay pursuant to 11 U.S.C. § 362(c)(1). The motion referenced the previous dismissal of the chapter 13, but alleged "that by proceeding under the correct Chapter of Title 11, that he will be able to sell real property or confirm a Chapter 11 Plan that will allow the sale or [sic] real property that is in the best interests of all of his creditors." The motion thus alleged that the Debtor's filing

---

[1] *United States of America v. Small*, Western District of Missouri, Case No. 17-000192-01-CR-W-GAF, the Honorable Gary A. Fenner presiding.

was in good faith. The motion was supported by an affidavit of the Debtor attesting to truth of these allegations.

A bank holding perfected liens in Debtor's real estate soon objected to the motion to extend stay. In a lengthy and detailed filing, the bank set forth a devastating denouncement of the Debtor's "good faith" in the chapter 11 filing: that Debtor had filed the chapter 13 on the day the bank's foreclosure sale of the real estate was scheduled; that the bank's liens were perfected; that there was no equity in the real estate and that the Debtor's debts in the form of bank liens, IRS liens and real estate tax liens significantly exceeded the chapter 13 debt limits; that after dismissal of the chapter 13, the Debtor had assured the bank he could sell the real estate, convincing the bank to forbear from recommencing a foreclosure; but after months of delay with no sale the bank had noticed another foreclosure sale for February 12; and that Debtor had again filed a bankruptcy case the day of the scheduled foreclosure sale. The bank further detailed that, according to the Debtor's own chapter 11 schedules, there was no equity in the real estate: the bank was owed $446,000; the IRS had liens of more than $1.5 million, and that Debtor scheduled the value of the real estate at only $850,000.

Finally, the bank noted that according to the Debtor's Schedules I and J, the Debtor had net income of only $1,450 per month and with monthly expenses of more than $1,700 per month, a net negative monthly income, and otherwise no financial ability to fund a chapter 11 plan. Shortly after the bank's objection was filed, SLF withdrew the motion to extend stay.

In the interim, the UST conducted an in-office "initial debtor interview" with the Debtor and an SLF attorney, Mr. Cusack. During the interview, Mr. Cusack admitted that no SLF attorneys had reviewed the criminal tax evasion case, read the plea agreement, consulted with the Debtor's criminal counsel, or contacted either the IRS or U.S. Attorney's office before filing the bankruptcy case, notwithstanding the fact that SLF knew of the criminal tax evasion case and listed it on the SOFA. Mr. Cusack also told the UST that the Debtor intended to dismiss the case.

Shortly after the initial debtor interview, SLF filed a motion to dismiss the chapter 11 case. In the motion, SLF alleged that it believed there was equity in the real estate to pay the IRS, but that it became apparent later that there was no equity and that the property could not be sold, and that "[b]ecause the Debtor's primary assets consist of real property that have no equity, and the Debtor has minimal disposable income with which to fund a plan, there is nothing for the Debtor to reorganize."

The Debtor subsequently appeared for the § 341 meeting of creditors, conducted by the office of the UST. At that hearing, the attorney for the UST questioned the Debtor about the source of the payment to SLF. The Debtor contradicted his attorney's statement that he had paid about half of the attorney fee in cash and half in other funds. Instead, the Debtor testified under oath that the fee was comprised of only $2,500 to $3,000 in cash, plus a cashier's check, plus a debit card payment drawn on a corporate business account. The Debtor also testified that after meeting initially with SLF, and needing to come up with more funds for the chapter 11 attorney fee, he sold some scrap metal he personally owned, and deposited the sale proceeds in a corporate bank account (RSB Leasing, LLC), and then

used a corporate debit card to pay the balance of the fees to SLF. When asked about where he came up with the rest of the funds for the $20,500 he paid SLF, he testified that his mother and brother had given him money.

After SLF filed the motion to dismiss the case on March 9 (less than 30 days after the case had been filed on February 12), the movants filed motions to compel disgorgement. Both motions alleged in essence that the case should never have been filed, and that if SLF had done reasonable due diligence – by even just reading the plea agreement on file in the District Court – it would have known that Debtor had criminally evaded payment of more than $1.5 million in payroll taxes and that the chapter 11 as a result had zero chance of success. Movants sought disgorgement of the entire $20,500, including the $4,467.75 SLF paid itself prepetition, to be used to pay down the expected criminal restitution. The USA also noted that the Debtor's sentencing was scheduled for March 9 when the case was filed but had later been rescheduled for April 17.

The Court granted the Debtor's motion to dismiss but reserved jurisdiction over the disgorgement motions and any matters relating to fees. At the initial hearing on April 16, SLF stated it was holding $16,032.25 in trust and subject to a restraining order issued by the District Court in the criminal case and that it was not disputing disgorgement of that amount. The Court commented that it was unlikely the filing fee would be disgorged, and that attorneys deserved some compensation for at least consulting with the client to determine whether a bankruptcy filing was feasible. But since SLF had not filed any

monthly fee statements, the Court would need to see itemized time records filed in support of an application for compensation.

SLF promptly filed a fee application and submitted time records.[2] The itemization showed that on Saturday, February 10, 2018, Mr. Cusack charged 2.50 hours at $245/hour for a total of $612.50, largely for drafting the first-day motions and applications. Notably, Mr. Cusack charged .20 hour to "locate criminal case in U.S. District Court." Mr. Sader charged 4.60 hours at $335/hour, or a total of $1,541 for conferring with the client, reviewing the previous chapter 13 filing, and reviewing and revising the petition, schedules, statements, and first-day motions and applications. An SLF paralegal charged 2.50 hours at $125/hour for drafting and revising the petition and schedules.

Mr. Sader billed another .85 hours on Monday, February 12, for certain revisions and emails with the Bank's lawyer. The total time SLF billed prefiling was 10.45 hours, or a total of $2,750.75 in fees. The itemization shows an expense of $1,717.00 on February 12 for the court filing fee, making a total of $4,467.75 SLF reimbursed itself out of the trust account purportedly before filing.[3]

---

[2] The fee application included itemization for an additional $7,343.23 in postpetition fees and expenses charged, but SLF made clear it was not seeking approval of any postpetition amounts.

[3] When asked how SLF paid itself before the filing, Mr. Sader said he thought it was by a check drawn on SLF's trust account and deposited into SLF's operating account at the same bank. He did not know whether the check actually cleared prepetition. The Court notes that an attorney for a chapter 11 debtor is not authorized to be paid postpetition absent court approval. See 11 U.S.C. § 327 (requiring professionals to be employed); § 363 (authorizing debtors to spend funds only in the ordinary course); § 330 (governing applications for approval of compensation for services and reimbursement of expenses); and § 331 (governing interim awards). *See also* Missouri Rules of Professional Conduct 4-1.15(a)(6).

At the final hearing, Mr. Sader argued that the purpose of the chapter 11 filing was to stop the Bank's foreclosure of Debtor's real estate, so that the Debtor could sell it and create more "equity" to pay the IRS. When pressed about the fact that the real estate – being encumbered by not only a substantial deed of trust but also $1.5 million plus in tax liens – had no equity, Mr. Sader pushed back, saying the plan was to convince the IRS to release its liens to allow a sale. He admitted that he did not know if the IRS would release its liens, and the attorney for the USA stated that she was prepared to put on evidence from the IRS agent to testify that the IRS would not have released its liens under these circumstances. Mr. Sader admitted there would have been problems with the sale, because the contract his client presented him only covered a portion of the real estate. Eventually, Mr. Sader conceded there was no "equity" in the Debtor's real estate.

The Court then asked Mr. Sader: assuming the real estate could have been sold for $850,000, what was the plan for this debtor to deal with the $1.0 million plus in nondischargeable taxes that would still be owed, given his limited income and the fact he was being sent to prison (the Debtor actually reported to prison on June 1). Mr. Sader again attempted to evade the Court's question, but eventually admitted that the plan was to dismiss the case after any sale. Mr. Sader, to his credit, candidly conceded that his Rule 2016(b) statement and affidavit in support of the SLF employment application were inaccurate, in that they misrepresented SLF's fee agreement with the Debtor ($18,000 for attorney fees, not $20,500) and failed to distinguish between the legal fees paid and the expenses reimbursed. Mr. Sader was not candid about failing to disclose that Debtor's

8

brother and mother were the source of some of the fees, however, stating that he had not asked the Debtor about any other party beside RSB Leasing being a source of the fees he had received.

The UST for its part, argued that SLF should not be forced to disgorge the filing fee or fees for a portion of the legal services, but that a disgorgement of $1,864.25 of the $4,467.75 was appropriate. The USA argued for complete disgorgement, noting that the District Court had expressly found that Debtor's chapter 11 bankruptcy filing violated the terms of the plea agreement and pointing out that the District Court had imposed an enhanced sentence as a result.

## *Discussion*

The standards for determining the reasonableness of attorney compensation in chapter 11 cases is well-established in the Eighth Circuit. A bankruptcy court does not determine the reasonableness of an attorney's compensation in hindsight. *In re Miller Automotive Group, Inc.*, 521 B.R. 323, 326-27 (Bankr. W.D. Mo. 2014). The Bankruptcy Code requires only that the services in question had the reasonable likelihood of benefitting the estate at the time they were provided, not that they actually did provide a benefit. *Id.* at 327. The Court must make this determination in an objective manner. *Id.* While it is not necessary to have a successful reorganization in order for debtor's counsel to be awarded fees, fees may be denied when counsel should have realized that reorganization was not feasible and therefore services in that effort did not benefit the estate. *In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996). The attorney seeking compensation bears the burden of proving

9

entitlement to all fees and expenses requested. *In re Kula*, 213 B.R. 729, 736 (8th Cir. B.A.P. 1997). This burden is not to be taken lightly, given that every dollar expended on legal fees results in a dollar less that is available for distribution to creditors – here, for the benefit of the IRS. *In re Ulrich*, 517 B.R. 77 (Bankr. E.D. Mich. 2014) (citations omitted).

Here, although the Court's inclination initially was to allow SLF some time and expense reimbursement, the Court in good conscience cannot do so on this record. The Court is deeply troubled that an experienced and well-respected lawyer charging $335/hour failed in the most basic of due diligence – to investigate the impact of filing bankruptcy on the Debtor's criminal case. Had any SLF attorney taken the few minutes needed to review the plea agreement and the criminal case, or to have called the Debtor's criminal counsel, the U.S. Attorney or the IRS, he would have realized immediately that filing any bankruptcy – but particularly an individual chapter 11 bankruptcy – was patently in bad faith, given the fiduciary duties chapter 11 imposes on a debtor on behalf of the creditors and the estate. *See* 11 U.S.C. §§ 1106, 1107.

The time records speak for themselves: there was no attempt to seriously evaluate the feasibility of this debtor filing bankruptcy. Rather, this case smacks of a rush to get paid out of a substantial retainer, and to sort out any damage to the Debtor, the creditors, or the estate later, by simply dismissing.

The Court cannot condone this failure, as it cannot condone the inaccuracies in the fee disclosures.[4] Indeed, the inaccuracies in the disclosures alone are sufficient to require complete disgorgement. *In re Redding,* 263 B.R. 874 (8th Cir. B.A.P. 2001) (Bankr. W.D. Mo. Nov. 20, 2015). SLF's failure to evaluate the filing, its failure to ensure accurate fee disclosures, and its failure to accept responsibility[5] for this disaster are each alone valid reasons to grant the motions to disgorge.

It is therefore ORDERED, ADJUDGED, AND DECREED that the Motions to Compel of the UST and the USA are GRANTED; that the Application of SLF for compensation is DENIED; that SLF is ordered to disgorge the sum of $4,467.75 for the benefit of the USA forthwith and in accordance with any orders of the District Court; and that SLF is to hold the remaining funds in trust pending any further orders of the District Court.

IT IS SO ORDERED.

/s/ Cynthia A. Norton
JUDGE CYNTHIA A. NORTON
United States Chief Bankruptcy Judge

Dated: June 7, 2018

---

[4] SLF attorneys have been repeatedly warned by the Court about the importance of accurate fee disclosures, and have been the subject of previous disgorgement orders for this failure. *E.g., In re Judy Joan Kriz*, Case No. 13-40192-can13; *In re Taylor Janell Collier*, Case No. 13-43736-can13 (Bankr. W.D. Mo Jan. 29, 2018).

[5] In SLF's response to the UST's and IRS's objections to the fee application, SLF impugned the integrity of the UST by asking why the UST was not seeking disgorgement from the chapter 13 attorney, and cited Rule 9011 in response to the IRS pointing out that the filing breached the plea agreement, prompting the IRS attorney to have to file a supplemental response with the transcript of the District Court indeed making that finding.